IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number:_____

MEGAN J. BARRY,

    Plaintiff,

v.

AUTO CLUB INSURANCE ASSOCIATION
d/b/a AAA INSURANCE COMPANY,

    Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

COMES NOW the Plaintiff above-named by and through her counsel, Law Offices of Stuart A. Kritzer, P.C., and by way of Complaint in the above-captioned matter states and alleges as follows:

### I. JURISDICTION – 28 U.S.C. §1332

1. Plaintiff is a resident and domiciliary of 1677 South Balsam Court, County of Jefferson, Lakewood, Colorado 80232.

2. Defendant ("AAA") is a Michigan corporation with its principal place of business located at 1 Auto Club Drive, Dearborn, Michigan 48126.

3. There is a complete diversity of citizenship between the Plaintiff and Defendant whose acts and omissions described herein involve interstate commerce.

4. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## II. GENERAL ALLEGATIONS

5.     Plaintiff incorporates by reference paragraphs 1 through 4 as if fully set forth herein.

6.     Plaintiff is a named insured on a policy AUT002867892, issued by the Defendant. In it, Defendant contracted with Plaintiff's father to provide, *inter alia,* Uninsured Motorist coverage in the amount of $500,000 on a 2007 Ford Escape LMT ("insured vehicle") which, at all times pertinent, was permissively operated by the Plaintiff.

7.     On April 17, 2010, Plaintiff was a resident and domiciliary of the City of Lakewood, Jefferson County, Colorado and the insured vehicle garaged at that address.

8.     On April 17, 2010, Ms. Barry was the properly restrained driver of the insured vehicle when it was rear-ended by a 2004 GM Yukon driven by Richard Amato, an uninsured motorist. The impact of the collision caused Ms. Barry's vehicle to hit the back of a 1996 Kia, driven by Susan Menninga. Mr. Amato was cited at the scene of the collision by the Lakewood Police Department for "Careless Driving". Ms. Barry's and Mr. Amato's vehicles received extreme damage. Defendant paid a total loss settlement of $18,080.72 for Plaintiff's vehicle.

9.     As a direct and proximate result of Mr. Amato's negligence, Plaintiff sustained a number of injuries, the most significant of which was a left shoulder, anterior-inferior labral tear and anterior shoulder instability.

10.    As a result of the traumatic damage to her shoulder, she underwent surgery on August 18, 2011, at which time Dr. James Ferrari performed a left shoulder arthroscopic anterior capsulorraphy with labral repair.

11. Notwithstanding that surgery as well as Plaintiff's participation in physical therapy and all post-surgical modalities of care available to her, she sustained a permanent injury which has left her with an increased risk of developing arthritis, permanent physical impairment, permanent disfigurement, a greater likelihood of future dislocations and need for future shoulder surgery as well as diminished function and earning capacity, and pain. The cost of Ms. Barry's care was $30,084.37. In addition to the medical care she received, she incurred out-of-pocket expenses of $6,356.52.

### III. HISTORY OF DEFENDANT'S MISCONDUCT

12. On September 5, 2012, Plaintiff (through her Counsel) sent correspondence with supporting documentation to adjuster Tim Sexton of AAA Insurance requesting $145,000.00 in return for a full and final release of Plaintiff's Uninsured Motorist claim. That correspondence, without attachments, is attached as **Exhibit 1.**

13. On November 19, 2012, Mr. Sexton left a message on undersigned counsel's ("Counsel") answering service, offering $42,000 in settlement. That e-mail message is attached hereto as **Exhibit 2.** It was the only response or offer made by Defendant pertaining to Plaintiff's claims.

14. On November 20, 2012, Plaintiff responded to Defendant's offer with $130,000.00. That correspondence is attached hereto as **Exhibit 2.**

15. On November 30, 2012, after Sexton advised, for the first time, that AAA believed it could take a credit for the full amount it paid in med pay benefits against any UM offer it made and its $42,000 offer included that offset, Counsel sent him an e-mail which provided, in pertinent part:

> "I am attaching Colo. Rev. St. §10-4-635 and invite your attention to subsection (3)(a), p. 2, which I have highlighted for your convenience. It is illegal ('an

insurer...shall not have a right to recover...') to attempt to recover against a user or operator of an insured vehicle an amount equal to the medical payments paid under the policy. This would obviously include attempting to do so by way of reimbursement from a 1st party of UM benefits by way of set-off. In fact, as noted in the last sentence: 'An insurer shall not have a direct cause of action against an alleged tortfeasor for benefits paid under medical payments coverage.' If a carrier cannot recover against a 3rd party for med pay benefits paid under the policy, it most assuredly cannot recover them from its own insured. It is also well-established in Colorado that its law, not the law of the home state of the vehicle, controls when the accident occurs here. See, *Ranger v. Fortune*, 881 2d 394 (Colo. App. 1994). "

That e-mail is attached hereto as **Exhibit 3**.

16. On December 4, 2012, Counsel again wrote to Mr. Sexton asking for a prompt and fair response to Plaintiff's $130,000.00 counter of November 20th. See, attached **Exhibit 4.**

17. On December 13, 2012, Counsel sent another e-mail to Mr. Sexton asking when Plaintiff might receive "a good faith offer of settlement from her insurance carrier, AAA". See attached **Exhibit 5.**

18. On January 16, 2013, Counsel again wrote Sexton with a chronology of the events, a summary of the previous correspondence and communications, and a detailed explanation of the applicability to the circumstances present here of C.R.S. §10-3-1115 and §10-3-1116. A copy of that correspondence is attached as **Exhibit 6**. It concluded with the following: "Since AAA has conceded $50,000 is appropriately payable under Ms. Barry's policy as compensation for her injuries, damages and losses there could be no good faith basis for failing to immediately tender that amount as the undisputed portion of her claim."

19. On January 25, 2013, Counsel received correspondence from Mr. Sexton which acknowledged receipt of the former's correspondence of January 13. "Please be advised we are currently reviewing this matter with Colorado counsel and *will provide you with a response within 30 days*." (Emphasis supplied) A copy of that correspondence is attached as **Exhibit 7**.

4

20. On February 11, 2013, Counsel again wrote Mr. Sexton advising, in pertinent part:

> "I am in receipt of your correspondence of January 25, 2013 which again fails to address your company's demonstrated unwillingness to provide Ms. Barry with either a timely or good faith offer or anything resembling a response to this office's January 16, 2013 detailed analysis of the matter. Moreover, it is now five months later and your company still has not provided a written response to my client's September 5, 2012 Uninsured Motorist (UM) demand."

A copy of that correspondence is attached as **Exhibit 8.**

21. Counsel received correspondence of February 22, 2013, attached as **Exhibit 9**, which acknowledged receipt of undersigned's correspondence of February 11. In it, Mr. Sexton wrote, in pertinent part: "As advised in our January 25, 2013 correspondence, we are in the process of reviewing this matter *with Colorado counsel*. We are currently in the process of completing the investigation and will contact your office upon completion." (Emphasis supplied). If Defendant secured the services of Colorado counsel for the purpose of "reviewing this matter", it would have been the third counsel from whom an opinion was sought, presumably with Defendant's claimed right to set-off med pay. To date, no response has been received nor has Defendant, to Plaintiff's knowledge, ever sought a judicial determination of that issue as is clearly its right and the common practice of insurance companies in like circumstances. However, and irrespective of the issue of med pay set-off, Defendant's offer is unconscionably low and its course of conduct throughout its dealings with Plaintiff since receiving her UM demand in bad faith.

22. Notwithstanding Defendant's as yet unsupported, and legally unsupportable, contention it has a right of set off from its contractual obligation to fully and fairly compensate Plaintiff, the policy itself provides for $20,000 in medical expenses with zero dollars deductible that expressly notes they are "stacked" to other benefits. Moreover, in a September 23, 2010

written communication with Plaintiff's prior attorney, Adrienne K. Woodland, Claim Representative of Defendant stated, in pertinent part: "Please be advised our insured has $60,000 in medical and wage loss benefits with no deductible. *This policy is stacked.*" (Emphasis supplied). A copy of that correspondence is attached as **Exhibit 10.**[1]

23. On September 30, 2010, Plaintiff's prior counsel, Attorney Bob C. Bell, was advised by Michael Fliehler of Allstate that its policy of insurance on the Amato vehicle was terminated on January 22, 2010 for non-payment, prior to the April 17, 2010 date of loss: "There is no coverage for this loss". A copy of that correspondence is attached as **Exhibit 12.**

24. On March 7, 2013, counsel emailed Mr. Sexton a copy of a recent Denver District Court opinion in *Cartagena v. State Farm*, which provided yet another application of C.R.S. §10-4-635 supportive of the proposition and Plaintiff's oft-stated contention that it is illegal in Colorado to offset UM benefits with payments made under med pay. In addition to providing a copy of the Opinion, counsel advised Mr. Sexton, in pertinent part, as follows:

> "By your own admission, your company has sought legal opinions from at least three firms to support its actions regarding the set-off issue yet, despite my requests, you have never provided any authority from Minnesota or Colorado courts, *or even your counsel*, which supports your position. No less importantly, you have never provided the rationale or basis for your company's grossly inadequate settlement offer and continuing refusal to negotiate at all, much less in good faith, or even pay the non-disputed amount of my client's claim which AAA believes is worth $42,000. Under the circumstances, it cannot be said there is anything 'fairly debatable' about the dispute here."

A copy of that correspondence is attached as **Exhibit 13.**

### FIRST CLAIM FOR RELIEF NEGLIGENCE – UM CLAIM

25. Plaintiff incorporates by reference paragraphs 1 through 24 as if fully set forth herein.

---

[1] Counsel received correspondence of May 8, 2012 from William Griffin, Defendant's Claim Representative, which provided, in pertinent part: "Please be advised our insured (Plaintiff) has $20,000.00 in medpay and $20,000.00 wage loss benefits with no deductible. **The policy is stacked.**" Emphasis supplied. See, attached **Exhibit 11.**

26. At all times relevant hereto, Richard Amato, *an uninsured motorist,* had a duty to exercise reasonable care in the operation of his motor vehicle upon the public roadways of the State of Colorado.

27. Amato breached that duty by failing to stop in time so as not to violently strike the rear of Plaintiff's vehicle and push her into the vehicle in front. Amato's negligence caused a violent collision with Plaintiff and her vehicle.

28. As a direct and proximate result of Amato's negligence, the Plaintiff has been injured and damaged as described herein.

29. Defendant, as Plaintiff's Uninsured Motorist carrier, is responsible for Plaintiff's damages but has delayed and/or refused to pay for the same.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment Pursuant to 28 USCA §§2201-2202 and Fed. R. Civ. P. 57 and Request for Speedy Hearing)

30. Plaintiff incorporates by reference paragraphs 1 through 29 as if fully set forth herein.

31. Plaintiff and Defendant cannot agree on the Uninsured Motorist benefits to which Plaintiff is entitled under her insurance contract with Defendant due, at least in part, to the fact that Defendant maintains it has a right of set-off for all sums it paid under the med pay provisions of Plaintiff's policy from what it owes Ms. Barry under the Uninsured Motorist benefits portion of her policy. Therefore, a judicial determination of the parties' rights with respect to the issue of med pay set-off would be beneficial to the litigants and to secure the just, speedy and inexpensive determination of this action.

32. Pursuant to Fed. R. Civ. P. 57, Plaintiff requests this Court grant her a speedy hearing to determine her rights under said automobile insurance contract.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract)

33. Plaintiff incorporates by reference paragraphs 1 through 32 as if fully set forth herein.

34. Plaintiff has complied with all conditions precedent to coverage under the insurance policies issued by Defendant for which Plaintiff is an insured.

35. To the extent Plaintiff might conceivably have failed to comply with any contractual obligations, and she expressly denies this is the case, Defendant has not been prejudiced by the same.

36. At all times relevant to this action, Defendant owed Plaintiff not only an implied duty of good faith and fair dealing but an express one as well under C.R.S. §10-3-1113(1).

37. Defendant has breached that duty and its contract with Plaintiff by delaying and denying payment of adequate and fair Uninsured Motorist compensation under the policy.

38. As a direct and proximate result of Defendant's breach of contract, Plaintiff has incurred damages in an amount or amounts to be proven at the time of trial.

### FOURTH CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

39. Plaintiff incorporates by reference paragraphs 1 through 38 as if fully set forth herein.

40. As a provider of insurance services to the public, in general, and Plaintiff, in particular, Defendant at all times had, and has, a duty to be actuated by good faith and fair dealing in everything pertaining thereto, abstain from deceptive or misleading practices and keep, observe, and practice the principles of law and equity in all matters pertaining to the business of insurance.

41. Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and there exists a statutory duty for insurers such as Defendant to act in good faith with respect to their insureds, such as Plaintiff.

42. Defendant has breached its duty of good faith and fair dealing that it owed Plaintiff by, *inter alia*:

   a. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under its policy which insured Plaintiff;

   b. Unreasonably delaying and/or withholding benefits under the insurance policy without a reasonable basis for delaying and/or withholding benefits, with knowledge or reckless disregard or a lack of reasonable basis for delaying and/or withholding benefits;

   c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy;

   d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   e. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims after its liability has become reasonably clear;

   f. Compelling Plaintiff to institute litigation to recover amounts due under the insurance policy by offering substantially less than the amounts Plaintiff is entitled to recover;

   g. Forcing Plaintiff into the costly and lengthy process of litigation; and,

   h. Any further acts which may be discovered.

43. Defendant's aforesaid conduct was unreasonable and it either knew such conduct was unreasonable or recklessly disregarded the fact that it was.

44.  As a direct and proximate result of Defendant's bad faith breach of its duty of good faith and fair dealing, Plaintiff has sustained damages in the amount or amounts to be proved at trial.

## FIFTH CLAIM FOR RELIEF
### (Violation of C.R.S. §10-3-1115(1)(a) – Improper Denial of Claims)

45.  Plaintiff incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

46.  Defendant's delay, denial and deliberate undervaluation of Plaintiff's first party claim for uninsured motorist benefits was, and continues to be, unreasonable and in violation of C.R.S. §10-3-1115.

47.  Pursuant to C.R.S. §10-3-1116(1), and in addition to all other damages proven and remedies provided by law and contract, Plaintiff is entitled to her reasonable attorney fees, costs and two times the covered benefit.

WHEREFORE, Plaintiff prays for judgment against Defendant on all claims in amounts to be proved at the time of trial, interest at the highest rate or rates allowed by law, costs, expert witness fees, attorney fees as permitted by statute and law, and such other and further relief as applicable law and this Court deem just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES**

Dated this 14th day of March, 2013.

        LAW OFFICES OF STUART A. KRITZER, P.C.

        By: *s/ Stuart A. Kritzer*
           Stuart A. Kritzer
           140 East 19th Avenue
           Third Floor
           Denver, Colorado 80203
           Telephone: (303) 393-1111
           Facsimile: (303) 394-2719
           E-mail: stuart@kritzer.com

          ATTORNEYS FOR PLAINTIFF

Plaintiff's Name an Address:

Megan Barry
1677 South Balsam Court
Lakewood, Colorado 80232